UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**THOMAS MID MOSSER,**

Debtor.

Case No. **09-60299-11**

## MEMORANDUM OF DECISION

At Butte in said District this 13th day of May, 2009.

On May 5, 2009, the Motions to Dismiss pursuant to 11 U.S.C. § 1112(b) filed by creditors Bayview Loan Servicing, LLC ("Bayview"), Veritas Capital, LLC ("Veritas") and Absolute Resolutions Corporation ("Absolute") came for hearing before the Court. The Montana Department of Revenue (the "MDOR") joined in the Motions to Dismiss. David L. Charles and Kevin P. Heaney appeared on behalf of Bayview, Steven M. Johnson appeared on behalf of Veritas and Absolute, Keith A. Jones appeared on behalf of the MDOR, and Debtor Thomas M. Mosser (the "Debtor") appeared *pro se*. Debtor was the only witness that testified at the hearing. The Court, having reviewed the pleadings, considered the exhibits and heard the witness testimony, now makes the following:

### FINDINGS OF FACT

1.  The Debtor, with a college degree in business administration, several years experience as a bank loan officer, experience as a developer of shopping centers and in investment banking, has a degree of sophistication regarding financial issues far beyond that of most similarly situated debtors.

2. The Debtor is experienced in bankruptcy matters having filed and successfully handled a Chapter 7 proceeding *pro se* which he filed in March of 1993 in this Court listing assets of $510 and liabilities of $2,002,248.

3. The Debtor purchased the Imperial Inn, a hotel property in Bozeman, Montana, in October, 2002, and transferred it to a limited liability company known as Downtown Realty Investors, LLC ("DRI") in January of 2003. The Imperial Inn was thereafter owned and operated by the DRI until 2009. Debtor was and remained the sole member and owner of DRI.

4. On October 31, 2006, DRI borrowed $852,000 from Silver Hill Financial, LLC and executed an Adjustable Rate Promissory Note (the "Bayview Note"), marked as Exhibit BV-11, as evidence of the debt. Mosser personally guaranteed the Note. The Note was secured by a Deed of Trust and Security Agreement (the "Deed of Trust") encumbering the real property and personal property comprising the Imperial Inn. Silver Hill Financial, LLC assigned the Bayview Note, Deed of Trust, and Guaranty to Bayview.

5. Neither Debtor nor DRI made a single payment on the Bayview Note. As a result, Bayview filed a Complaint for Foreclosure in Montana's Eighteenth Judicial District Court, Gallatin County (the "State Court"), on March 21, 2007.

6. The State Court made the following rulings:

A. On January 12, 2009, appointed a receiver (the "Receiver") to take possession of the Imperial Inn;

B. On February 18, 2009, granted summary judgment to Bayview on its Complaint for Foreclosure in the amount of $1,399,153.70;

C. On March 2, 2009, entered the Order, Final Judgment and Decree of Foreclosure

(the "Bayview Judgment") in favor of Bayview and against DRI and Mosser; and

D.   On March 2, 2009, in the Bayview Judgment, resolved all of the third-party claims made by DRI and Mosser against Silver Hill Financial, LLC and related entities in favor of the third-party defendants, and against DRI and Mosser.

7.   On February 4, 2009, the Debtor executed a warranty deed transferring the Imperial Inn from DRI to himself (Exhibit BV-2). No consideration, monetary or otherwise, changed hands to support the execution of that warranty deed. The Debtor also filed Articles of Termination for DRI with the Montana Secretary of State on February 5, 2009, paying the additional fee required in order to secure immediate processing (Exhibit BV-1). The Debtor took no other action whatsoever to dissolve or wind up the business affairs of DRI, which at that time had many secured and unsecured creditors. In particular, no bill of sale or other document was executed transferring personal property owned by DRI to the Debtor and no documents were executed to transfer the motor vehicle owned by DRI to the Debtor. Further, the Debtor took such actions without notifying or obtaining consent from the State Court, the Receiver or any of his creditors.

8.   The Debtor did not consider the fact that the Imperial Inn was then in the possession of the Receiver which had been appointed by the State Court on January 12, 2009. He forgot about the personal property owned by DRI and did not consider the provisions of Montana Limited Liability Company Act, which dictates that property owned by DRI cannot be transferred to its member without first being sold to satisfy any creditors of DRI.

9.   The Debtor's only purpose in transferring the property from DRI to himself and attempting to wind up DRI was to create a situation where he could represent himself in this

Chapter 11 bankruptcy proceeding.

10. The Debtor filed a motion to stay execution of the Bayview Judgment on February 19, 2009 with the State Court, which was the day after the State Court entered the Bayview Judgment. The Debtor learned by reading Bayview's resistance to his motion to stay execution that he would need to file a supersedeas bond in order to obtain a stay of the execution as he requested.

11. The Debtor filed his bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in this Court on March 9, 2009 in order to prevent the State Court execution from taking place. The Debtor freely admitted on the stand that he intended for the automatic stay to act as a substitute for the supersedeas bond requirement, which he admits he could not have obtained.

12. The Debtor omitted from his schedules debts he had claimed were owed to him by his former employer as recently as a month prior to the filing of the petition.

13. Although the record is somewhat unclear, the Court finds that the Debtor had been contemplating filing bankruptcy for some time prior to March 9, 2009. Despite that fact, it is clear the Debtor has formulated no general or particular plan or concept for a reorganization of any type whatsoever.

14. The Debtor intended to use this Court as a forum to relitigate the Bayview Judgment. The Debtor testified that if the Bayview debt remains in place as is under the Bayview Judgment, no reorganization is feasible or possible and the Court finds that to be true.

15. If the Debtor's reorganization plan were formulated around the concept of continuing the delusional development effort of a luxury hotel which was at the heart of the

4

Debtor's plan for the Imperial Inn from the time of its acquisition to the present, the Court finds that no feasible reorganization plan could be proposed. The Court bases its conclusion on the following:

- A. The Debtor, despite his experience and sophistication in such matters, was completely unable to generate any of the funding necessary for the development in the period between the fall of 2002 and March of 2009.
- B. The Debtor tried numerous dubious and highly suspect alternatives to obtain such funding, none of which was even remotely successful.
- C. Despite the time that has passed, the Debtor offers no hint or clue whatsoever as to what different or alternative methods could be proposed or utilized to obtain the financing that would allow that development to go forward.
- D. The permissions or consents which the Debtor had obtained from the City of Bozeman to implement the development have all expired and the local permitting and approval process would have to start over.
- E. All development plans have been contingent on control of the whole parcel on which the Imperial Inn sits, along with an adjacent corner parcel. The Debtor no longer has control of adjacent corner parcel, having lost it in June of 2008, according to Exhibits BV-16 and BV-17.
- F. The Debtor's dream of developing a luxury hotel is, and likely always was, a fantasy.

16. If the Debtor's reorganization plan encompassed only the operation of the Imperial Inn, the Court finds any such plan would not be feasible for the following reasons:

5

A. While not making a single payment on the Bayview Note, the Debtor was also apparently unable to pay any of the basic and critical ongoing expenses of operation of the Imperial Inn including, according to the testimony at the hearing on May 5, 2009, required insurance payments, special assessments, property taxes, lodging facility use taxes, plumbing bills, water and sewer bills, cable bills, electric and gas bills, phone bills and the bills of at least nine of the internet booking firms through which reservations were made. In addition, the Debtor was unable or refused to explain which of the other debts listed on his schedules marked Exhibits BV-26, 27 and 28 (Debtor's Schedules D, E and F) were accrued for the ongoing operation of the motel and which were for development expense.

B. The total annual payment on the Bayview Note alone was to be approximately $96,000.

C. The Court finds particularly troubling the fact the Debtor's failure to remit lodging facility use taxes collected from guests to MDOR for an extended period of time, which amount now stands at $71,865.26.

D. The unrebutted testimony of the Receiver at the hearing on April 14, 2009, the transcript of which was admitted for consideration by this Court by agreement of all parties, established that the operating income from the Imperial Inn was barely sufficient to meet the ongoing expenses without any payments to pay interest or principal on the mortgage debts which include the Bayview Note and the Ken Beldring debt of $81,000 incurred in April of 2008 by the Debtor according to Exhibits BV-19 and BV-20, or any other of the existing debts.

6

  E. The Debtor offers no explanation as to how he could obtain funds to pay ongoing operations and reduce any of the outstanding debts, including the Bayview Judgment.

  F. The Court finds that the testimony of the Receiver at the hearing on April 14, 2009 was credible and that the testimony of the Debtor at that same hearing was not credible. The unrebutted testimony of the Receiver at that hearing established that the condition of the Imperial Inn was deplorable under the Debtor's operation. Further, the unrebutted testimony of the Receiver established that the Imperial Inn was in severe physical disrepair, unsafe, many rooms were unfit for habitability, and virtually all maintenance and upkeep was ignored.

  G. The Courts finds that as opposed to attempting to rebut the Receiver's testimony, the Debtor instead attempted to deflect the Court's attention from the relevant issues by engaging in unsubstantiated attacks on the Receiver. The Court finds that the Debtor's allegations against the Receiver are unfounded and are not well taken.

  H. Coinciding with his intent to never pay his debt to Bayview, the Debtor has intentionally failed to pay real property taxes and insurance on the Imperial Inn. Therefore, Bayview has had to force-place insurance and pay the requisite property taxes.

 17. The Debtor freely admits that prior to accepting the $852,000 loan on October 31, 2006, he had made a determination not to repay the principal or any interest because of the "mortgage fraud" he alleged occurred. The Court finds that his conduct since that date, including

filing the filing of this Bankruptcy, is in pursuit of his goal not to repay anything to Bayview.

18. The Debtor has not provided any explanation, let alone a credible explanation, for the change in net worth between the delivery of his financial statement on October 31, 2006, showing a net worth of $671,026.04, as evidenced by Exhibit BV-9, and a negative net worth of over a million dollars shown on his Bankruptcy Schedules. Further, the Debtor has not adequately explained or accounted for his use of over $1,600,000 in cash he received between October 31, 2006 and the filing of his petition. That cash includes the $852,000 in loan proceeds, the cash receipts from motel operation of $611,752 in the last thirty months shown on Exhibit BV-22, the $81,000 he borrowed from Ken Beldring between April 3 and April 11, 2008, and the lodging tax he collected between the fourth quarter of 2006 and the filing of his Bankruptcy petition which he retained for his own use and benefit rather than delivering to the MDOR as required by law.

19. The Debtor has not offered a reasonable explanation or an adequate accounting of his purchase and sale of precious metals in the last thirty months. In light the Debtor's failure to explain or account for cash he received between October 31, 2006 and the filing of his petition, the Court is both suspicious and skeptical regarding the Debtor's conduct surrounding his purchase and sale of precious metals.

20. The Court finds that the Debtor generally lacks credibility and has been generally deceptive, misleading and less than forthcoming with the Court and his creditors on multiple issues in this proceeding.

21. The Court finds that the Debtor has not filed this Chapter 11 Bankruptcy proceeding with the intent or ability to reorganize, regardless of what his concept or plan of

8

reorganization may ultimately entail.

22. On March 11, 2009, Bayview filed an Emergency Motion to Excuse State Court Appointed Receiver from Compliance with 11 U.S.C. § 543, asking the Court to excuse the Receiver from the requirements of 11 U.S.C. § 543(a) and (b). The Court granted that motion on a temporary basis. The Court held a hearing on the motion on April 14, 2009, and the matter was taken under advisement. In light of the Court's resolution of the pending Motions to Dismiss as set forth below, the issues raised by Bayview's Motion to Excuse are now moot. The Court notes, however, that the record in this matter establishes a significant history of neglect and mismanagement of the Imperial Inn by the Debtor, with a demonstrable lack of any intent to operate the Imperial Inn for the benefit of creditors. *See e.g., supra*, Findings of Fact ¶¶ 16(C), 16(F), and 17. The Court notes that these facts would certainly warrant excusing the Receiver from the turnover requirements of § 543 if this case were to proceed. In no event would the Court have returned the Imperial Inn to the Debtor as debtor-in-possession.

23. Veritas' Motion to Dismiss included a request to annul the automatic stay with respect a post-petition levy made by a levying officer before Veritas or the levying officer had notice of Debtor's March 9, 2009 Chapter 11 petition filing. Veritas has a pre-petition state court judgment entered in May, 2008 against the Debtor, which is based upon the Debtor's voluntary confession of judgment. In light of the Court's resolution of the pending Motions to Dismiss as set forth below, the stay will be terminated by the dismissal, rendering the request for stay annulment moot.

24. Any Conclusion of Law that is more appropriately a Finding of Fact is incorporated herein by reference as a Finding of Fact.

9

From the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. To the extent the foregoing Findings of Fact incorporate Conclusions of Law, or the application of law to fact, they are incorporated herein as Conclusions of Law.

2. A Chapter 11 petition may be dismissed "for cause" pursuant to 11 U.S.C. § 1112(b). The limitations imposed on Chapter 11 filings by 11 U.S.C. § 1112(b) are meant "to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

3. A debtor's lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. *Marsch*, 36 F.3d at 828; *citing In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *In re Stolrow's, Inc.*, 84 B.R. 167, 170 (9th Cir. BAP 1988). The test for good faith is "whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828.

4. Whether good faith exists in proposing a plan of reorganization is an assessment to be made by this Court, and viewed under the totality of the circumstances. *Stolrow's*, 84 B.R. at 172; *citing In re Jorgensen*, 66 B.R. 104, 108-109 (9th Cir. BAP 1986). Good faith requires that a plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and also requires a fundamental fairness in dealing with one's creditors. *Id.* The Court is in the best position to assess the good faith of the parties. *Id.*

5. A petition filed in bad faith may manifest an intent to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize a debtor's financial activities. *In re Thirtieth*

10

*Place, Inc.*, 30 B.R. 503 (9th Cir. BAP 1983).

6.    The following factors, while not exclusive of other evidence of bad faith, are usually present in cases not filed in good faith and may be considered in a motion to dismiss for cause:

(1)    The debtor has only one asset.

(2)    The secured creditors' lien encumbers that asset.

(3)    There are generally no employees except for the principals.

(4)    There is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.

(5)    There are few, if any, unsecured creditors whose claims are relatively small.

(6)    There are allegations of wrongdoing by the debtor or its principals.

(7)    The debtor is afflicted with the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

(8)    Bankruptcy offers the only possibility of forestalling loss of the property.

*Stolrow's*, 84 B.R. at 171.

7.    Additionally, a debtor's intent to use the automatic stay imposed by 11 U.S.C. § 362 as a substitute for posting a supersedeas bond, without any genuine intent or ability to reorganize, is evidence of bad faith. *In re Karum Group, Inc.* 66 B.R. 436 (Bkrtcy.W.D. Wash., 1986); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr.S.D.N.Y.1984).

8.    A debtor's attempt to use the Bankruptcy Court as a substitute appellate court, to review or relitigate a state court judgment, is an impermissible use of Chapter 11 of the

11

Bankruptcy Code. *Wally Findlay Galleries*, 36 B.R. 851.

9. Given the Court's finding that the Debtor has not filed this Chapter 11 Bankruptcy proceeding with the intent or ability to reorganize, regardless of what his concept or plan of reorganization may ultimately entail, the Court concludes that the Debtor is not "attempting to effect a speedy, efficient reorganization on a feasible basis" as required for a good faith Chapter 11 filing. *See Marsch*, 36 F.3d at 828. The Debtor's complete failure to offer any explanation as to how he could obtain funds to pay ongoing operations and reduce any of the outstanding debts, including the Bayview Judgment, is wholly inconsistent with an intent to reorganize on a feasible basis. The Court therefore concludes that the Debtor's petition was filed for the purpose of delaying his creditors (including the specific purpose of forestalling imminent execution on the Bayview Judgment) by invoking the automatic stay, without any intent or ability to reorganize his financial activities. *See In re Thirtieth Place, Inc.*, 30 B.R. 503.

10. In addition to the Debtor's failure to explain how he could possibly present a feasible plan of reorganization, there are numerous other indicia of bad faith surrounding the filing of the Debtor's Petition. The Debtor has only one significant asset (the Imperial Inn Property), which is encumbered by the lien of the Debtor's major secured creditor, Bayview. There is little or no cash flow from the existing business, and certainly not enough to service any long-term debt or sustain a feasible reorganization. There is significant, unrebutted evidence of wrongdoing by the Debtor, including neglect and severe physical disrepair of the Imperial Inn property, intentional refusal to pay necessary taxes and property insurance on the property, and retention of lodging facility use taxes collected from guests for his the Debtor's own use, rather than delivering such moneys to the MDOR as required by law. The Debtor transferred DRI's

principal asset to himself on the eve of bankruptcy for no consideration and without winding up the business, in violation of Montana's limited liability company statutes, for the sole purpose of gaining access to bankruptcy court, a transaction the Court views as highly suspect and generally indicative of an improper state of mind. The Debtor's clear impetus for his bankruptcy Petition was to invoke the automatic stay to forestall imminent execution on Bayview's judgment against him, and his resort to the automatic stay offered the only possibility of forestalling execution. The Court concludes that all of these facts further establish the Debtor's lack of good faith. *See Stolrow's*, 84 B.R. at 171.

11. Ultimately, whether a filing was made in bad faith "depends on an amalgam of factors and not upon a specific fact." *In re Arnold*, 806 F.2d 937, 930 (9th Cir. 1986). Having considered the amalgam of foregoing factors surrounding the Debtor's filing in their totality, The Court concludes that Debtor's Bankruptcy Petition was filed for the impermissible purpose of unreasonably deterring and harassing his creditors, rather than as a genuine attempt to effect a speedy, efficient reorganization on any feasible basis. *Marsch*, 36 F.3d at 828. Accordingly, the Court concludes that this case must be dismissed for cause pursuant to 11 U.S.C. § 1112(b).

12. In addition to granting relief for all of the reasons enumerated in § 1112(b), a bankruptcy court may dismiss a chapter 11 case in its entirety for lack of good faith. As the court held in *Little Creek*:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith from the commencement, prosecution, and confirmation of bankruptcy proceedings. *See In re Victory Constr. Co.*, 9 B.R. 549, 551-60 (Bankr. C.D. Cal. 1981) (containing an excellent historical survey).
>
> \* \* \* \*
>
> Requirement of good faith prevents abuse of the bankruptcy process by

> debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."
>
> * * * *
>
> Several, but not all, of the following conditions usually exist. The debtor has but one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(21), 363(e), or 364(d)(1).
>
> * * * *
>
> Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases. (Citing cases)
>
> * * * *
>
> Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."

*Little Creek*, 779 F.2d at 1071-73; *accord, In re Pacific Rim Investments*, 243 B.R. 768 (Colo. 2000). This Court has followed the rationale and holding of *Little Creek* in *Bennett, Retick & Bennett*, 84 B.R. 182, 5 Mont. B.R. 381 (Bankr. D. Mont. 1988), and *In re Silver Creek Property Management, Inc.*, 7 Mont. B.R. 171 (Bankr. D. Mont. 1989).

This is precisely the factual situation in this case as shown by the above findings of facts. Mosser has no ability to reorganize for the benefit of creditors, and his demeanor on the stand proves he is in a hopeless financial condition, seeking only to delay the inevitable consequences of the finality of the state court foreclosure action. *See, in accord, In re Thirtieth Place*, 30 B.R. at 503, where the debtor on the eve of foreclosure conveyed the real property to a new owner and

then proceeded to file a chapter 11 petition on behalf of the new owner:

Where a petition is filed to subvert the legitimate rights of creditors in the absence of any reasonable expectations that the debtor can successfully reorganize, there is no basis for access to chapter 11 and the protective machinery of the automatic stay.

*Little Creek* is similar factually to the case *sub judice* where *Little Creek*, as debtor, by filing a chapter 11 petition "simply wanted to transfer . . . [foreclosure] litigation from state court to bankruptcy court where it could have an automatic injunction and escape the state court's bond requirement", i.e., state court proceedings on foreclosure. *Little Creek*, 779 F.2d at 1071.

As set forth above, this is Debtor's second bankruptcy filing, where he resorts in bad faith to frustrate state court procedures and judgments. I conclude that the Debtor's filings necessitate further remedy to the secured and unsecured creditors so as to prevent another misuse of the Bankruptcy Code by an arrogant, self-serving individual who has no respect for creditors' rights or the provisions of the Bankruptcy Code.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the Debtor's objections, granting the Motions to Dismiss filed by creditors Bayview, Veritas, and Absolute, dismissing this case pursuant to 11 U.S.C. § 1112(b) for bad faith, and enjoining and prohibiting the Debtor Thomas Mid Mosser from refiling another bankruptcy petition in this District for a period of one (1) year. All other pending motions will be denied as moot given dismissal.

DATED May 13, 2009.

_____
HON. JOHN L. PETERSON
United States Bankruptcy Judge